# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-40351

United States Court of Appeals
Fifth Circuit

**FILED**

May 20, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

RICARDO HINOJOSA,

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, SOUTHWICK, and GRAVES, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Ricardo Hinojosa pled guilty to one count of possession with intent to distribute 211 kilograms of marijuana. The district court found that he was responsible for 2,648.8 additional kilograms of marijuana as relevant conduct pursuant to the United States Sentencing Guidelines. The resulting increase in his base offense level, combined with the effects of other challenged sentencing factors, enhanced his prison sentence substantially. There is no indication in the record, however, that it affected his mandatory minimum sentence as prescribed by his offense of conviction. Finding no plain error by the district court in Hinojosa's sentencing, we AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

No. 13-40351

On September 1, 2011, Immigration and Customs Enforcement (ICE) agents learned from a confidential informant that a load of marijuana would be smuggled across the United States-Mexico border at Roma, Texas in a blue Dodge pickup truck. ICE relayed this information to the Roma Police Department. Roma police officers saw such a truck. After the truck failed to stop at a stop sign, the driver sped away when the officers sought to pull him over. Finally, the driver, Jose Ibarra, stopped and surrendered to police. A search of the truck discovered 211 kilograms of marijuana.

On September 9, the defendant Hinojosa informed an ICE agent that he owned the blue Dodge pickup truck, that he lent it to Javier Gonzalez to transport marijuana, and that he had not received any money for lending his truck to the smuggling effort. He also stated that he lent the truck to assist Roma police in apprehending drug smugglers and seizing drugs. The underlying scheme appears to have been this: Hinojosa would lend his truck, coordinate the smuggling of the marijuana, and inform a Roma police officer that marijuana would be smuggled across the border. Once the marijuana crossed the border, Hinojosa and some co-defendants would steal most of the load of marijuana and report the description of the vehicle containing the remainder of the load to the Roma police officer. Once Roma police began pursuing the reported vehicle, the driver, usually a member of the conspiracy, would abandon it along with the marijuana, and officers would seize the car and the marijuana – typically making no effort to apprehend the fleeing driver. At least one Roma police officer was said to be involved in these schemes, so he could take credit for the eventual seizure of the marijuana.

On April 17, 2012, a two-count indictment filed in the United States District Court for the Southern District of Texas, charged Ricardo Hinojosa and certain co-defendants with conspiracy to possess with intent to distribute more than 100 kilograms of marijuana and possession with intent to distribute

2

more than 100 kilograms of marijuana. *See* 21 U.S.C. §§ 846; 841(a); 841(b)(1)(B). Accompanied by counsel, Hinojosa pled guilty on August 17, 2012, to count two in exchange for the government's recommendation of dismissal of count one and a two offense-level decrease for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a). The district court accepted Hinojosa's guilty plea.

The Presentence Report (PSR) for Hinojosa outlined several other incidences of Hinojosa's marijuana distribution activities. Specifically, the PSR discussed Hinojosa's involvement in the theft of 1,587.6 kilograms from a warehouse in Pharr, Texas in February 2011, preparing a truck and trailer from which 816.2 kilograms was later seized in November 2011, and with scouting for law enforcement while another individual was transporting 245 kilograms that was later seized in February 2012. Combined with the 211 kilograms in his blue Dodge pickup truck, the PSR concluded he was responsible for a total of 2,860.8 kilograms of marijuana as relevant conduct. A defendant responsible for more than 1,000 but less than 3,000 kilograms of marijuana is subject to a base offense level of 32. *See* U.S.S.G. § 2D1.1.

The PSR also discussed two incidents that occurred after Hinojosa had been charged but prior to entering his guilty plea. While he was detained on April 26, 2012, Hinojosa phoned his sister. During the call, he instructed her to tell a co-defendant "not to [waver] from" a storyline Hinojosa established for the events: that the marijuana seized on September 1, 2011 was transported so that it could be seized by Roma police. On June 29, 2012, Hinojosa sent a five-page, handwritten letter to the district court denying that he had ever stolen marijuana, that he had no knowledge of the September 1 transaction beyond lending his truck, and, as he stated in the phone call to his sister, that the marijuana transaction was arranged to help Roma police. He later admitted to the district court that these statements were false. In light of these

two occurrences, the PSR recommended applying a two-level increase for obstruction of justice. Consequently, he would also be disqualified from receiving the two-level reduction for acceptance of responsibility. Ultimately, the PSR recommended a total offense level of 34, resulting in a Guidelines sentence range of 151-188 months imprisonment.

The district court conducted Hinojosa's sentencing hearing on January 30, 2013. Hinojosa made several objections to the PSR's recommendations. First, he objected to the reliance on a confidential source as evidence of the theft of marijuana from the Pharr warehouse. Second, he objected to reliance on the statement of an undercover agent identifying him as attaching the truck and trailer for the soon-to-be seized 816 kilograms of marijuana. He made no other objections to marijuana quantities. Relevant to our analysis, he made no constitutional objection to the district court's findings on these quantities as relevant conduct. Finally, though he admitted he lied to the court in the letter and made the phone call to his sister attempting to influence his co-defendant, he objected to the obstruction of justice enhancement and the disallowance of his acceptance of responsibility reduction. Despite that the government had agreed in Hinojosa's plea agreement to recommend the acceptance of responsibility reduction, it advocated for the obstruction of justice enhancement and did not recommend the reduction.

The district court denied Hinojosa's objections, adopted the findings and recommendations of the PSR establishing an offense level of 34 with no criminal history points, and sentenced Hinojosa to 151 months imprisonment followed by four months supervised release. Hinojosa appeals the district court's findings of additional drug quantities as relevant conduct, the obstruction of justice enhancement, and the denial of the acceptance of responsibility reduction.

No. 13-40351

In addition, Hinojosa raises two new claims on appeal.  First, he contends that the sentence violates the Sixth Amendment, which requires facts that increase a mandatory minimum sentence to be found beyond a reasonable doubt by a jury.  *See Alleyne v. United States*, 133 S. Ct. 2151 (2013).  Second, he contends that the government breached its plea agreement by advocating for the obstruction of justice enhancement and failing to recommend the acceptance of responsibility reduction.

DISCUSSION

We review the district court's findings of fact at sentencing for clear error and its application of the federal sentencing guidelines *de novo*.  *United States v. Chavez-Hernandez*, 671 F.3d 494, 497 (5th Cir. 2012).  We thus review Hinojosa's properly-preserved claims regarding the additional quantities, the obstruction of justice enhancement, and the denial of the acceptance of responsibility reduction in this manner.

Because Hinojosa failed to raise before the district court his constitutional claim and his claim that the government breached the plea agreement, they are not preserved and plain error review applies.  *See id.*  That standard applies even as to a new rule of substantive constitutional law identified by the Supreme Court if the challenge was not presented to the district court.  *United States v. Miranda*, 248 F.3d 434, 443 (5th Cir. 2001) (applying plain error review where *Jones v. United States*, 526 U.S. 227 (1999) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), were decided during the pendency of direct review and where the defendant had not raised challenges as raised in those cases).  To prevail under plain error review, a defendant must show (1) error, (2) that is clear or obvious, and (3) that affected the defendant's substantial rights.  *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quotation marks and citation omitted).  If those requirements are met, the reviewing court may in its discretion remedy the error only if it (4)

"seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration in original).

*I. Additional Drug Quantities and Relevant Conduct as* Alleyne *Error*

Hinojosa contends that the Fifth and Sixth Amendments of the United States Constitution require drug quantities that increase the mandatory minimum sentence for an offense to be found beyond a reasonable doubt by a jury. The Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne*, 133 S. Ct. at 2155. Thus, we need to determine whether a mandatory minimum sentence was increased due to judicial fact-finding.

To understand Hinojosa's argument, it is useful to compare the statute under which he was indicted and pled guilty, and from which a five-year mandatory minimum is drawn, to a different subsection of one of those statutes that contains a ten-year mandatory minimum sentence. The statutes identified in the count of the indictment to which Hinojosa pled guilty were these: (1) 21 U.S.C. § 846, for conspiracy; (2) Section 841(a)(1), for possession with intent to distribute a controlled substance; and (3) Section 841(b)(1)(B), which sets a mandatory minimum sentence of five years for violations of subsection (a) when the quantity of marijuana is 100 kilograms or more. Though he was not charged under Section 841(b)(1)(A), Hinojosa argues that the district court's determination that he was responsible for 2,860.8 kilograms of marijuana effectively caused that section's mandatory minimum of ten years – applicable to 1,000 or more kilograms of marijuana – to become the relevant statute. His Guideline range of 151-188 months, and his actual sentence of 151 months, were both greater than ten years. Under *Alleyne*, he argues, the 1,000 kilograms or more quantity of drugs became an element of the offense and becomes a fact that must be found by a jury. We note that Hinojosa's guilty plea admitted all elements of the offense charged in the indictment, but only

6

an amount more than 100 kilograms but less than 1,000 kilograms was charged.

*Alleyne* is the most recent in a line of Supreme Court authority defining certain aspects of criminal conduct as elements that must be found beyond a reasonable doubt by a jury. The foundational opinion was *Apprendi*, where the Court held that a statutory sentencing enhancement which increased a potential criminal penalty beyond the maximum sentence provided by the statute of conviction is to be considered an element of the crime itself and accordingly must be found beyond a reasonable doubt by a jury. 530 U.S. at 490. In *Alleyne*, the Supreme Court expanded this principle to include any statutory provision which, by its operation, increases the mandatory *minimum* sentence. 133 S. Ct. at 2155.

Applicable here, the *Alleyne* opinion did not imply that the traditional fact-finding on relevant conduct, to the extent it increases the discretionary sentencing range for a district judge under the Guidelines, must now be made by jurors. *See United States v. Booker*, 543 U.S. 220, 257 (2005) (rejecting a requirement that a jury find facts as to all relevant drug quantities for sentencing purposes under the Guidelines); *see also Alleyne*, 133 S. Ct. at 2169 (after the jury returns a verdict of guilty, "the judge [is] free to consider any relevant facts about the offense and offender, including facts not found by the jury beyond a reasonable doubt."). Further, nothing in this record supports that Hinojosa's sentence was the result of the probation office or the district court's concluding that a ten-year mandatory minimum applied. *See id.* ("[n]o additional finding of fact was 'essential' to any punishment within the [statutory] range."). Instead, the PSR states that Hinojosa was subject to a mandatory minimum sentence of five years and a maximum of forty years, as provided under Section 841(b)(1)(B). The district court never referred to a

mandatory minimum during the sentencing hearing or in the judgment of conviction and sentence.

The Supreme Court in *Alleyne* equated the reasons for requiring jury fact-finding when a mandatory statutory minimum sentence was increased to situations when a statutory maximum sentence was increased. *See* 133 S. Ct. at 2155. The Court did not suggest that the setting of Sentencing Guidelines ranges in a PSR, which structure but do not control district judge discretion, were subject to the same requirement. The statutory minimum of the offense of conviction will apply once guilt is determined on the elements charged in the count of conviction. On occasions when the PSR or district court mistakenly applies a higher statutory minimum sentence, resentencing often occurs as a matter of course because the government concedes the error. *See e.g.*, *United States v. Ortiz*, 613 F.3d 550, 559 (5th Cir. 2010). Quite differently, Guideline ranges based on relevant conduct and other factors will often extend far above a statutory minimum. As a matter of simple logic, those ranges may even exceed a higher statutory minimum applicable to a related offense. When that is the case, nothing in *Alleyne, Apprendi, Booker* or other authority provides that the discretionary range of the Guidelines triggers a statutory minimum higher than the one applicable to the count of conviction or the requirement of jury fact-finding.

We earlier explained why this argument is subject to plain-error review. The first two steps of that review are to determine if there was error, and if so, if it was plain. We hold that there was no error, obscure or plain.

## II. Breach of the Plea Agreement

Hinojosa contends the government breached the plea agreement by advocating for the inclusion of the additional quantities of marijuana. He further argues that the government breached the agreement by advocating for the obstruction of justice enhancement and failing to recommend the

acceptance of responsibility reduction.  Because Hinojosa did not complain in the district court that the government breached the plea agreement, plain-error review controls our analysis.  *See Chavez-Hernandez*, 671 F.3d at 497. "We apply general principles of contract law in order to interpret the terms of [a] plea agreement." *United States v. Lewis*, 476 F.3d 369, 387 (5th Cir. 2007). To determine whether a plea agreement was breached we consider "whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement." *Id.* at 387-88 (quoting *United States v. Valencia*, 985 F.2d 758, 761 (5th Cir. 1993)).

The language of the plea agreement contains neither a reference to drug quantity nor a promise not to advocate for the inclusion of relevant conduct. Nonetheless, Hinojosa argues that a breach occurred because he agreed to plead guilty to possession of 211 kilograms of marijuana, and no more.   No legal authority pointed out to us supports his position that the plea agreement, which contained no promise to refrain from advocating for relevant conduct at sentencing, nonetheless must be interpreted that way.  We cannot conclude that Hinojosa's "reasonable understanding of the agreement" would include a term prohibiting the government for advocating for the inclusion of relevant conduct under the Guidelines. *See id.*  Hinojosa has failed to carry his burden of showing there was error in not holding the government to account for this alleged breach of the plea agreement by urging consideration of the higher drug quantities as relevant conduct.

As to the acceptance of responsibility issue, the plea agreement states: "The Government will recommend . . . that the offense level decrease by 2 levels pursuant to U.S.S.G. § 3E1.1(a) if the defendant clearly demonstrates acceptance of responsibility."  The government did not recommend the two-level decrease; instead, it actively advocated for the obstruction of justice enhancement.   The government argues that Hinojosa's actions clearly

demonstrated he did not accept responsibility, including his falsity-laden letter to the district court and his efforts to influence a co-defendant to mislead law enforcement as to the marijuana smuggling operation. Hinojosa responds that both instances of conduct occurred well *before* he pled guilty. Thus, he argues, the government's agreement to recommend acceptance of responsibility with full knowledge of those two incidents precludes using them as a justification for not making the agreed-upon recommendation.

The government's promise in the plea agreement was conditioned on his "clearly demonstrat[ing] acceptance of responsibility." Hinojosa argues that because the promise was made with knowledge of the two incidents, the government effectively was promising to make the recommendation absent further obstruction. We need not consider the effect of these facts, because even had the government breached the plea agreement, Hinojosa still must show that the government's breach affected his substantial rights. *See Puckett*, 556 U.S. at 135. "The defendant whose plea agreement has been broken by the Government will not always be able to show prejudice . . . [perhaps] . . . because he likely would not have obtained those benefits in any event." *Id.* at 141. We conclude that it is highly unlikely the district court would have granted Hinojosa the two-level reduction regardless of the government's breach.

Hinojosa submitted a letter to the district court containing numerous falsehoods that misstated the nature of his criminal activity. He instructed, through his sister, a co-defendant to do the same. The district court found Hinojosa's credibility so lacking that it was "suspicious of any word out of his mouth." The district court specifically referenced the above incidents when applying the obstruction of justice enhancement. The record is replete with evidence of Hinojosa's misleading the court and law enforcement and the district court was certainly aware of his conduct. The PSR, adopted by the

district court, also includes these instances of conduct and based its recommendations upon them.

Regardless of whether the government recommended the two-level reduction as the plea agreement contemplated, we cannot conclude the district court would have applied the reduction. Even if we could conclude that the government breached the plea agreement, it is practically certain that Hinojosa would have received the obstruction of justice enhancement and would not have received the acceptance of responsibility reduction.

## III.    *Druq Quantities as Relevant Conduct; Sufficiency of the Evidence*

Hinojosa makes numerous claims regarding the inclusion of additional drug quantities as relevant conduct for sentencing purposes. Most of them are evidentiary: Hinojosa claims that the only evidence of his involvement in the 1,587.6 kilogram Pharr warehouse marijuana theft and the 245 kilogram seizure was derived from unreliable sources. He further claims that evidence of the 816.2 kilogram truck-and-trailer came only from an undercover agent, who may have mistakenly identified the participant in that scheme as Hinojosa. He makes two additional, non-evidentiary claims: that his conduct in the Pharr warehouse marijuana theft should not be considered because it occurred before the offense of conviction and because he was a minor at the time. We address these contentions in turn.

"[Q]uantities of drugs not specified in the count of conviction may be considered in determining the offense level." U.S.S.G. § 2D1.1 cmt. n.5 (citing U.S.S.G. § 1B1.3(a)(2)). This calculation includes a defendant's "relevant conduct"; a defendant "is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." *Id.* § 1B1.3(a)(1)(A) & (B) cmt. n.2. "In drug distribution cases, we have broadly

defined what constitutes the same course of conduct or common scheme or plan." *United States v. Rhine*, 583 F.3d 878, 885 (5th Cir. 2009) (quotation marks and citations omitted). "Ultimately, the district court need only determine its factual findings at sentencing by a preponderance of the relevant and sufficiently reliable evidence." *United States v. Alaniz*, 726 F.3d 586, 618-619 (5th Cir. 2013). The defendant must carry "the burden of showing that the information in the PSR . . . is materially untrue" and "[m]ere objections do not suffice as competent rebuttal evidence." *Id.* at 619.

As described above, evidence of Hinojosa's involvement with the Pharr warehouse marijuana theft was supplied by a confidential informant; his involvement with the truck-and-trailer load was supplied by a federal agent; and his involvement with the 245 kilogram load was supplied by the individual arrested at the time of the seizure. Hinojosa's rebuttal was simply that the confidential informant, federal agent, and arrested individual were unreliable. Contrary to Hinojosa's arguments, it is not the government's burden to prove facts in the PSR are true; a defendant has the burden to show they are "materially untrue." *Id.* We conclude Hinojosa's contention that the district court relied on insufficient evidence to increase the quantity of marijuana for which he was held responsible is "mere objection" that cannot "suffice as competent rebuttal evidence." *Id.*

Hinojosa also argues that only conduct occurring after the offense may be considered as relevant conduct, citing *United States v. Vital*, 68 F.3d 114, 117 (5th Cir. 1995). He reads too much into the opinion. *Vital* held that conduct occurring after the offense of conviction *could* be considered relevant conduct. *Id.* at 118. We did not state anything about the propriety of considering conduct that occurred before the offense of conviction. As we already noted, "we have broadly defined what constitutes the same course of conduct or common scheme or plan" in the drug distribution context. *Rhine*,

No. 13-40351

583 F.3d at 885 (quotation marks and citation omitted).  The district court's finding that all of these events were part of such a common scheme is supported by the record.

The record shows that Hinojosa and his co-defendants' *modus operandi* was to arrange for a shipment of marijuana, lend vehicles and logistical support to the effort, steal the majority of the shipment, and then turn over the remainder to law enforcement.  The record reflects that during the time period between February 2011 and February 2012, Hinojosa was involved in numerous drug smuggling activities taking place in the Roma, Texas area, often with several of his co-defendants in this case.  Ultimately, there was sufficient evidence in the record to conclude that the February 2011 marijuana theft at the Pharr warehouse was a part of the broader drug distribution scheme.  *See id.*

Hinojosa's claim that he cannot be held responsible for the Pharr warehouse marijuana theft because it occurred when he was under the age of eighteen must also fail.  His only authority on this point is that 18 U.S.C. § 5031 requires conduct occurring before a defendant reaches the age of majority be subject to juvenile delinquency proceedings.  Nonetheless, the Guidelines do not contain any prohibition, for relevant conduct purposes, on activities occurring during a scheme that spans from before a defendant reaches the age of majority to after he reaches the age of majority.  We are persuaded by the government's argument that the realm of charged conduct and the realm of relevant conduct for Guidelines purposes are not coterminous.  But even if we were to conclude that the district court erred by including conduct committed as a minor, we agree with the government that it is harmless under these circumstances.  The Pharr warehouse incident resulted in 1,587.6 kilograms of marijuana being ascribed to Hinojosa.  Under the relevant Guideline, the district court applies a base offense level of 32 when

the defendant is responsible for more than 1,000, but less than 3,000 kilograms of marijuana. U.S.S.G. § 2D1.1(c). Thus, even if the 1,587.6 kilograms of marijuana were erroneously ascribed to Hinojosa because of his minority, he would still have exceeded 1,000 kilograms for the purposes of the Guidelines. Even if the district court erred, we conclude such error to be harmless.

IV.    *The Obstruction of Justice Enhancement*

Hinojosa argues that, in spite of his letter and the phone call to his sister, the government must carry the burden of showing that the conduct supported the enhancement. He argues that the enhancement only applies when the conduct materially affects the investigation and cites *United States v. Morales-Sanchez* for this proposition. 609 F.3d 637, 641 (5th Cir. 2010). His reliance on *Morales-Sanchez* is misplaced.

The Guidelines authorize a two-level increase in offense level for obstruction of justice "when a defendant engages in conduct which 'obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense.'" *United States v. Lowder*, 148 F.3d 548, 552 (5th Cir. 1998) (quotation omitted); *see also* U.S.S.G. § 3C1.1. Obstruction includes "threatening, intimidating, or otherwise unlawfully influencing a codefendant . . . or attempting to do so," and "providing materially false information to a judge or magistrate judge." U.S.S.G. § 3C1.1 cmt. n.4(A) & (F).

In *Morales-Sanchez* we held, consistent with the commentary to U.S.S.G. § 3C1.1, that where the allegedly obstructing conduct occurred "contemporaneously with arrest," that fact does not alone support the enhancement. *Morales-Sanchez*, 609 F.3d at 641; U.S.S.G. § 3C1.1 cmt. n.4(d). Here, though Hinojosa was in custody, he did not make his phone call to his sister "contemporaneously with [his] arrest." Consequently, the limitation provided in *Morales-Sanchez* and commentary to Section 3C1.1 does not apply

No. 13-40351

here. Thus, the government need not prove his conduct materially affected law enforcement's investigation in this case.

Though the phone call standing alone likely supports the enhancement, certainly Hinojosa's letter to the district court supports the enhancement as well. Without a doubt, that letter represented "providing materially false information to a judge." U.S.S.G. § 3C1.1 cmt. n.4(F). It is not relevant, again, whether or not this information actually obstructed or impeded the investigation of his crimes, or even whether the Judge believed his falsehoods. *See* U.S.S.G. § 3C1.1 application n.6 (defining material statements as those which, *if believed*, would tend to influence another). We conclude the obstruction of justice enhancement is firmly supported by the record.

AFFIRMED.