# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20629

United States Court of Appeals
Fifth Circuit

**FILED**
September 27, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

JOHN JACOB LAVERGNE,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CR-653-1

Before SOUTHWICK, WILLETT, and OLDHAM, Circuit Judges.

PER CURIAM:[*]

John Jacob Lavergne pleaded guilty to:

- conspiracy to possess with intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine (Count 1); and

- using, carrying, or possessing a firearm during and in relation to a drug trafficking crime (Count 16).

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20629

As part of his plea agreement, Lavergne waived his right to appeal his convictions and sentences. Lavergne raises two issues: (1) the Government breached the plea agreement by failing to move to dismiss Count 16 of the indictment; and (2) the district court erred in applying a two-level threat-of-violence enhancement to his sentence.

After examining the applicability and scope of the appeal waiver, we AFFIRM as to Lavergne's breach claim, and DISMISS his enhancement challenge because it is barred by his appeal waiver.

\*     \*     \*

An appeal waiver does not prevent Lavergne from alleging that the Government violated the terms of the plea agreement. *See United States v. Keresztury*, 293 F.3d 750, 755–57 (5th Cir. 2002); *United States v, Branam*, 231 F.3d 931, 931 n.1 (5th 2000). Generally, whether the Government breached a plea agreement is a question of law that we review de novo. *See United States v. Saling*, 205 F.3d 764, 766 (5th 2000). We examine "whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement." *United States v. Pizzolato*, 655 F.3d 403, 409 (5th 2001). But since Lavergne failed to object to the Government's alleged breach in the district court, our review is limited to plain error. *See United States v. Hinojosa*, 749 F.3d 407, 413 (5th Cir. 2014). To establish plain error, Lavergne must show a forfeited error that is clear or obvious and that affects his substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). If he makes such a showing, we have discretion to correct the error but only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id*. (internal quotation marks, brackets, and citation omitted).

As the Supreme Court observed in *Puckett*, "the second prong of plain-error review . . . will often have some 'bite' in plea-agreement cases." *Id*. at 143.

2

No. 17-20629

Under the second prong, "the legal error must be clear or obvious, rather than subject to reasonable dispute." *Id.* at 135. "Not all breaches will be clear or obvious. Plea agreements are not always models of draftsmanship, so the scope of the Government's commitments will on occasion be open to doubt." *Id.* at 143.

The plea agreement's first paragraph indicates that Lavergne agreed to plead guilty to both Counts 1 and 16 of the indictment. Paragraph 15 states that Lavergne "is pleading guilty because he is guilty of the charges contained in Count One and Count Sixteen of the Indictment." Yet, the agreement, without mentioning a guilty plea as to Count 16, provides in Paragraph 10(a) that, if Lavergne:

> pleads guilty to Count One of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing.

This plea agreement—particularly the tension between Paragraphs 1 and 15 with Paragraph 10(a)—is open to reasonable dispute. It is not clear or obvious how to reconcile those incongruous passages. And it is thus not clear or obvious that the Government breached the plea agreement by failing to move to dismiss Count 16. *See id.* at 135, 143. Accordingly, Lavergne has not shown he is entitled to relief under the plain-error standard. *See id.* at 135.

We recently reached the same conclusion in a virtually identical case, *United States v. Perez*, 478 F. App'x 253, 254 (5th Cir. 2012). Although not binding on us, *Perez* is well reasoned and persuasive. In *Perez*, plea agreement Paragraphs 1 and 17 indicated that Perez agreed to plead guilty to Counts 1 and 7 of the superseding indictment. *Id.* at 253–54. However, Paragraph 13(a) provided that if Perez pleaded guilty to Count 1, the Government would move to dismiss any remaining counts at sentencing. *Id.* at 254. We concluded there

was a lack of clarity as to the Government's obligation under the plea agreement: "it [was] not clear or obvious that the Government's failure to move for the dismissal of Count Seven at sentencing constitute[d] a breach of the agreement; rather, the matter [was] subject to reasonable dispute." *Id.* (internal quotation marks and citation omitted). *Perez* is on all fours, and, though unbinding, we apply the same logic here. Because this imprecise plea agreement is subject to reasonable dispute, Lavergne has not satisfied the plain-error standard.

In sum, we AFFIRM the district court's judgment convicting and sentencing Lavergne pursuant to a valid plea agreement. As for Lavergne's enhancement challenge, it is barred by his knowing and voluntary appeal waiver and is thus DISMISSED.[1]

---

[1] We acknowledge that the precise decretal language in our cases enforcing appeal waivers can seem inconsistent. Some cases use "dismiss" while others use "affirm." In this case, we use both terms because Lavergne raises two distinct issues on appeal. We AFFIRM as to the first issue—whether the Government violated the terms of the plea agreement by not seeking dismissal of Count 16. And we DISMISS as to the second issue—whether the district court erred in applying an enhancement. Why not dismiss Lavergne's appeal in its entirety? Because his claim that the Government breached the plea agreement is properly before us and we have reviewed its merits. An appeal waiver cannot bar a breach challenge. *See United States v. Roberts*, 624 F.3d 241, 244 (5th Cir. 2010) (rejecting Government's request to dismiss the appeal based upon the appeal waiver since "an alleged breach of a plea agreement may be raised despite a waiver provision"). Instead, we *affirm* that the district court convicted and sentenced Lavergne on the basis of a valid, unviolated plea agreement. In other sentencing appeals, where the appellant does not argue that the plea agreement was breached, but instead argues, incorrectly, that the appeal waiver is inapplicable, *dismissal* is appropriate. Consider *United States v. Bond*, 414 F.3d 542, 545 (5th Cir. 2015). In *Bond*, the appellant raised a waiver-interpretation argument—that the terms of the waiver did not bar his appeal. We disagreed and thus dismissed. If an appeal waiver covers, and thus bars, a challenge, there is no issue for our review, thus warranting dismissal. *See Dismissal Order,* Black's Law Dictionary (11th ed. 2019) (A "dismissal order" is an order that "end[s] a lawsuit without a decision on the merits."); *United States v. Bell*, 966 F.2d 914, 917 (5th Cir. 1992) ("[I]f the record contains no manifestation of the appellate rights . . . an appellate court may not reach the merits of the defendant's appeal."). Lavergne's appeal includes both types of challenges, so it gets a hybrid approach. We reach the merits of one issue (breach of the agreement, not barred by the appeal waiver—thus AFFIRM) but do not reach the merits of the other issue (enhancement of the sentence, barred by the waiver—thus DISMISS).

No. 17-20629

ANDREW S. OLDHAM, Circuit Judge, concurring in part and dissenting in part:

I agree with all but a few words in the court's opinion. Unfortunately, those words appear in the decretal language. *See* Jon O. Newman, *Decretal Language: Last Words of an Appellate Opinion*, 70 BROOK. L. REV. 727, 727 (2005) ("'Decretal language' is the portion of a court's judgment or order that officially states ('decrees') what the court is ordering."). I therefore have no choice but to dissent in part. I'd dismiss the appeal in full.

The judicial power vested by Article III is the power "to render dispositive *judgments*." *Plaut v. Spendthrift Farms, Inc.*, 514 U.S. 211, 219 (1995) (emphasis added) (quoting Frank H. Easterbrook, *Presidential Review*, 40 CASE W. RES. L. REV. 905, 926 (1990)). Sure, we write opinions to explain our reasons. And we hope those reasons are persuasive to the parties, our colleagues on the bench, and the taxpayers who employ us. But at the end of the day, it is the judgment that really matters: "The court's decision of a case is its judgment thereon. Its opinion is a statement of the reasons on which the judgment rests." *Rogers v. Hill*, 289 U.S. 582, 587 (1933).

After all, it is the *judgment* that affects the legal rights of the parties. Article III gives a federal court the power to decide "Cases" and "Controversies" brought by proper parties who're entitled to invoke our jurisdiction. U.S. CONST. art. III, § 2. A federal court decides a case or controversy by rendering a final and enforceable judgment, subject to revision only by a superior federal court. *See, e.g.*, *Hayburn's Case*, 2 U.S. (2 Dall.) 409 (1792); *United States v. Ferreira*, 54 U.S. (13 How.) 40 (1851). And it is the judgment that conclusively alters the rights of the parties in the case or controversy. *See, e.g.*, *Gordon v. United States*, 117 U.S. 697, 700–04 (1864) (stating that the judgments of Article III courts are "final and conclusive upon the rights of the parties");

5

*Jennings v. Stephens*, 135 S. Ct. 793, 799 (2015) ("Courts reduce their opinions and verdicts to judgments precisely to define the rights and liabilities of the parties.").

Numerous old chestnuts derive from this premise. Appellate courts "review[] judgments, not opinions." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). The appellee can "urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court." *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924). "While a decision below may be sustained, without a cross-appeal, although it was rested upon a wrong ground, an appellee cannot without a cross-appeal attack a judgment entered below." *Helvering v. Pfeiffer*, 302 U.S. 247, 250–51 (1937) (citation omitted). The preclusion doctrines hinge on judgments, not opinions. *E.g.*, Restatement (Second) of Judgments § 27 (1982). I could go on, but the point should be clear: Judgments really matter.

In this case, the district court entered judgment against Lavergne. RE tab 3. That judgment sentenced him to 420 months in prison, among other things. *Id.* at 3. Lavergne invokes our appellate jurisdiction to review that judgment. But our panel unanimously agrees that Lavergne has waived his rights to seek our review. That means, in my view, the appeal must be dismissed.

My reasons are three. *First*, there is a latent issue of Article III jurisdiction. Our Court has held that appeal waivers are non-jurisdictional. *See United States v. Story*, 439 F.3d 226, 231 (5th Cir. 2006). After all, the government is under no obligation to enforce an appeal waiver. *Ibid.* And, if they don't, we will review the case. *Ibid.* But I wonder if appeal waivers implicate another element of jurisdiction—namely, mootness.

A claim becomes moot "and therefore no longer a Case or Controversy for purposes of Article III . . . when the issues presented are no longer live." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation omitted). It does not matter "how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit." *Ibid.* Rather, a case is moot so long as the dispute "is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Ibid.*; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009) (holding a party loses standing to appeal once it settles a claim).

For example, the Supreme Court recently faced a trademark dispute between two shoe companies, Already and Nike. Already sought to invalidate Nike's trademark. In response, Nike filed a "covenant not to sue" with the district court and sought to dismiss the case as moot. The Supreme Court agreed, holding that it was "absolutely clear" that the case was no longer live. *Already, LLC*, 568 U.S. at 102. The Supreme Court reasoned that Already sought to invalidate Nike's trademark solely because Already wanted to prevent Nike from filing future lawsuits. *Id.* at 95–96. But Nike promised *never* to sue and was bound by that promise. *Id.* at 93–94. Therefore, the "covenant not to sue" encompassed the only Article III injury for which Already sought relief. Since the binding promise left nothing for the court to do, the Supreme Court affirmed the lower courts' dismissals of the case as moot. *Id.* at 102.

Criminal cases implicate different concerns than IP disputes. *See Garza*, 139 S. Ct. at 744–45. But I'm not sure those differences affect our appellate jurisdiction. Lavergne made a binding promise not to appeal. We found that promise valid, and we found it covers all of Lavergne's claimed "legal rights." *Already, LLC*, 568 U.S. at 91. Since the entirety of the relief Lavergne seeks is

encapsulated within a binding waiver of those rights, it's unclear whether there's a "live" controversy before us. *Ibid.*

At a minimum, if we want to exercise judicial power to "affirm" the district court's judgment, we must first consider our jurisdiction to do so. "Hypothetical jurisdiction produces nothing more than a hypothetical judgment." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). And Lavergne has offered no argument that there's a live controversy if we enforce the appeal waiver (as we have). That makes our jurisdiction no more than hypothetical. And it supports my conviction that we should dismiss.[2]

*Second,* putting aside the jurisdictional question, dismissal accords with a proper understanding of our appellate function. The fundamental question presented here is the same one presented in every case that reaches us under 28 U.S.C. § 1291: Should we exercise the judicial power to affirm, reverse, or vacate the district court's judgment? The Government says we should choose none of the above because Lavergne's appeal waiver stands in the way. We agree with the Government. So I'd think we should do the same thing we routinely do when we find such an obstacle: dismiss the appeal.

As this Court said in *United States v. Bond*, 414 F.3d 542 (5th Cir. 2005), the defendant "waived his right to appeal his sentence under the present circumstances. . . . The appeal is *dismissed*." *Id.* at 546 (emphasis added). We make similar statements all the time when defendants have agreed to an appeal waiver as part of their plea agreement. *See, e.g.*, *United States v. Casillas*, 853 F.3d 215, 218 (5th Cir. 2017); *United States v. Solis*, 2019 WL 3770813, *1 (5th Cir. Aug. 9, 2019); *United States v. Foy*, 743 F. App'x 572, 573

---

[2] It is no answer to say we have to review Lavergne's arguments to determine whether the Government can enforce the appeal waiver. *See ante* at 4 n.1. "[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002). The question is what to do after we've conducted that review and determined the appeal waiver bars Lavergne's claims.

No. 17-20629

(5th Cir. 2018); *see also* 15B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3918.8 (2012) [hereinafter WRIGHT & MILLER]. Even when we evaluate arguments addressing why the appeal waiver should not be enforced, we dismiss. *See Casillas*, 853 F.3d at 218.

We do the same thing in the civil context. *See, e.g., Campbell Harrison & Dagley, L.L.P. v. Hill,* 582 Fed. App'x 522, 524 (5th Cir. 2014); *Hill v. Schilling*, 495 Fed. App'x 480, 487 (5th Cir. 2012). For example, sometimes parties will agree between themselves to submit a dispute "for resolution by the District Court" alone. *Schilling*, 582 F. App'x at 487. So long as the party understood "the right to appeal that he or she [was] giving up," the waiver will be enforced, and the appeal dismissed. *Id.* at 488; *see also* 15A WRIGHT & MILLER, *supra*, § 3901.

*Third*, dismissal accords with our approach to analogous contexts. Take for example a run-of-the-mill liability waiver. Let's say *B* sues *A* for negligence and invokes the federal court's jurisdiction under 28 U.S.C. § 1332. But *A* says the lawsuit is barred by a liability waiver. If the waiver is lawful and *B*'s claims fall within the bounds of the waiver, the case will be dismissed. *See, e.g.*, *N. Y. Pizzeria, Inc. v. Syal*, 53 F. Supp. 3d 962, 966 (S.D. Tex. 2014) (dismissing claims against a defendant because a liability waiver "categorically released" him from liability); *see also Jones v. Wells Fargo Bank, N.A.*, 626 F. App'x 500, 506 (5th Cir. 2015) (deciding not to enforce the liability waivers because the waivers were invalid under Louisiana law). Whether *A* was actually negligent towards *B* will never be determined—the waiver is enforced through the dismissal of the claims.

An appeal waiver is more-or-less the same. Just as a district court will not decide a plaintiff's negligence claim when a liability waiver is properly invoked, a court of appeals will not decide the appropriateness of a defendant's

9

sentence when an appeal waiver is properly enforced. We consider whether the waiver is valid and whether the defendant's claims are covered by the waiver. *Cf. Story*, 439 F.3d at 229–30. If the claims are not covered by the waiver, we let the appeal proceed. *See Garza v. Idaho*, 139 S. Ct. 738, 744 (2019) (stating that "an appeal waiver does not bar claims outside its scope"). But if the waiver covers the defendant's claims and thus bars the appeal, the appeal is at an end. *See ibid.*; *Bond*, 414 F.3d at 546.

Or take our approach to *Anders* cases. *See Anders v. California*, 386 U.S. 738 (1967). In the typical *Anders* case, a lawyer will seek to withdraw from representing a defendant by filing a brief in this Court that outlines "anything in the record that might arguably support the appeal." *Id.* at 744. Should the lawyer meet the minimum standards in their brief, the Court will independently scrutinize "the portions of [the record] that relate to the issues discussed in the brief." *United States v. Flores*, 632 F.3d 229, 233 (5th Cir. 2011). If this independent review shows the appeal is "without merit," then the Court dismisses the appeal. *Id.* at 234. Our rules command that dismissal. *See* 5TH CIR. R. 42.2.

We review many *Anders* cases. Obviously, we review "the merits" of those cases. And many times, we'll find those appeals to be without merit because of the same flaw we face in this case: the enforcement of a valid appeal waiver. *See, e.g.*, *United States v. Lovato*, 698 F. App'x 791, 792 (5th Cir. 2017) (noting that appeal must be "dismissed" because "any other potentially nonfrivolous challenges are barred by the plea agreement"); *United States v. Jones*, 209 F. App'x 446, 446 (5th Cir. 2006). If *Anders* cases are routinely dismissed by this Court because of valid appeal waivers, then shouldn't we apply the same approach here? *See* 5TH CIR. R. 42.2; *cf. Flores*, 632 F.3d at 234.

No. 17-20629

In all of these cases—appeal waivers in the criminal context, appeal waivers in the civil context, liability waivers, and *Anders* briefs—we must carefully review the plaintiff's or appellant's invocation of the judicial power. In that limited sense, we review the "merits" of the arguments. But when we find an obstacle, we stop. We don't affirm, reverse, or vacate because the appellant gave up his right to any appellate disposition at all. We simply dismiss the appeal.

\* \* \*

The majority is quite right that our Court has been inconsistent in its approach to appeal waivers. *See ante* at 4 n.1 (majority op.). Sometimes our cases purport to "affirm" the district court's judgment—even though we never explain how or why we think it appropriate to exercise the judicial power in that way. When it comes to something as solemn and powerful as a federal court judgment, however, I think more care is required.