# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 2, 2009

Charles R. Fulbruge III
Clerk

No. 07-10977

UNITED STATES OF AMERICA

Plaintiff-Appellant

v.

JUAN ALBERTO DIAZ

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
No. 3:05-CR-275

Before KING, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Defendant–appellant Juan Alberto Diaz pleaded guilty to conspiring to distribute and possess with intent to distribute cocaine. He was sentenced to 108 months' imprisonment and three years of supervised release. The plea agreement included a limited waiver of appeal. On appeal, Diaz argues that his appeal waiver was not knowing and voluntary and goes on to challenge his sentence. Diaz claims that his sentence was procedurally unreasonable because the district court erred in applying a presumption of reasonableness to a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

sentence within the Guidelines range and failed to apply a preponderance of the evidence standard when considering Diaz's plea for leniency. Diaz also contends that his sentence was substantively unreasonable. For the following reasons, we affirm.

## I. Factual and Procedural Background

Defendant–appellant Juan Alberto Diaz pleaded guilty under 21 U.S.C. § 846 to one count of conspiring to distribute and possess with the intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine. As part of the plea agreement, Diaz stipulated to a factual resume that stated that he had transported "multiple kilograms of cocaine" between Dallas and Mexico from "July 2003 until at least October 11, 2004." Diaz's presentence report indicated that he was paid $15,000 for every load of cocaine he delivered to Dallas and was responsible for at least 50.5 kilograms of cocaine. Diaz was arrested without incident on July 18, 2006.

Under the written plea agreement, Diaz waived his right to challenge his conviction and sentence on direct appeal or through collateral proceedings. Diaz, however, reserved his rights to directly or collaterally challenge the voluntariness of his guilty plea or appeal waiver, and to directly appeal a sentence exceeding the statutory maximum punishment or an arithmetic sentencing error. Diaz certified in the written agreement that he had read the plea agreement with his attorney, that he understood it, and that he had voluntarily agreed to it.

After accepting Diaz's guilty plea, the district court sentenced him to 108 months' imprisonment—at the bottom end of the 108 to 135 month applicable

Guidelines range—based on a total offense level of 31 and a criminal history category of I. Diaz timely appealed this sentence.

For the first time on appeal, Diaz argues that his appeal waiver was not knowing and voluntary. Diaz also contends for the first time that his sentence was procedurally unreasonable because the district court applied a presumption of reasonableness to his within-range sentence and applied an incorrect standard of proof to Diaz's request for leniency. Finally, Diaz argues that his sentence was substantively unreasonable.

## II. The Appeal Waiver Challenge

Diaz contends that his appeal waiver was not knowing and voluntary because the magistrate judge who conducted the plea colloquy provided an explanation of the waiver that conflicted with the provisions of the written plea agreement. Diaz contends that the magistrate's explanation violated Federal Rule of Criminal Procedure 11(b)(1)(N), which requires the court to "inform the defendant of, and determine that the defendant understands, . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." FED. R. CRIM. P. 11(b)(1)(N).

At the plea colloquy, the magistrate judge asked Diaz to examine a copy of the written plea agreement. In response to the magistrate judge's questions, Diaz confirmed that he had read the plea agreement, understood its terms, and had discussed it with his attorney before signing. Diaz affirmed that the written document set forth all of the terms of his plea agreement. The magistrate judge then asked Diaz whether he understood that he had given up his "right to appeal, except in the limited circumstances of a sentence exceeding the statutory maximum punishment, or an arithmetic error at sentencing" and that he had

3

given up his "right to challenge [his] sentence through . . . a writ of habeas corpus . . . except in the limited circumstances of challenging the voluntariness of your plea of guilty or this waiver, or to bring a claim of ineffective assistance of counsel." Diaz responded in the affirmative. The magistrate judge did not state that under the written plea agreement, Diaz had also retained the right to challenge the voluntariness of his guilty plea or appeal waiver and the right to bring a claim of ineffective assistance of counsel on direct appeal. The magistrate's incomplete explanation, in short, portrayed the waiver as relinquishing *more* rights than were actually relinquished under the waiver provisions of the written plea agreement.

Diaz contends that the fact that he affirmed the correctness of the magistrate judge's explanation of the waiver shows that he was "confused" and did not understand the terms of the plea agreement. The government counters that Diaz's signed certification that he had read and understood the written plea agreement and his affirmation about the same to the magistrate judge shows that the plea was knowing and voluntary. The government contends that even if the magistrate judge incompletely explained the contents of the waiver provision, the explanation made it appear as if Diaz were waiving *more* rights than he actually was, and therefore, if Diaz relied on this explanation, it was with the understanding of a *broader* waiver that Diaz proceeded with his guilty plea.

Because Diaz's appeal is more easily resolved on the merits, we decline to decide whether an appeal waiver is knowing and voluntary where the written plea agreement accurately describes the waiver and the defendant certifies in writing and swears in court that he has read and understood the plea

4

agreement, but the defendant also affirms the accuracy of the district court's overbroad characterization of the waiver.[1] For purposes of this appeal, we assume without deciding that Diaz's plea was not knowing and voluntary and therefore address his challenges to his sentence.

### III. The Procedural Unreasonableness Challenge

Diaz contends, for the first time on appeal, that his sentence was procedurally unreasonable because the district court improperly presumed that a sentence within the applicable Guidelines range was reasonable and failed to apply a preponderance of the evidence standard when considering Diaz's request for leniency.

Because Diaz did not raise either of these objections in the district court, we review for plain error. *United States v. Davis*, 487 F.3d 282, 284 (5th Cir. 2007). To establish plain error, an appellant must show a forfeited error that is clear or obvious and that affected his substantial rights. *Puckett v. United States*, --- U.S. ---, 129 S. Ct. 1423, 1429 (2009). Ordinarily, an error affects substantial rights only if it "'affected the outcome of the district court proceedings.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)); *see also Davis*, 487 F.3d at 284. If the appellant makes this showing, "the court of

---

[1] Unpublished decisions from the Fifth Circuit have held that Rule 11(b)(1)(N) is violated and the appeal waiver is not knowing and voluntary when the district court characterizes the waiver as being *narrower* than the waiver described in the written plea agreement. *See, e.g., United States v. Rodriguez–Perez*, 184 F. App'x 451, 453 (5th Cir. 2006); *United States v. Whavers*, 166 F. App'x 112, 114 (5th Cir. 2006); *United States v. Hernandez Flores*, 155 F. App'x 745, 746 (5th Cir. 2005). But these cases do not explain whether the court's statement violated Rule 11(b)(1)(N) only because the statement could have led the defendant to believe that he was waiving *fewer* rights than he actually was, or, more broadly, because the defendant's affirmation of the correctness of both the written plea agreement and the court's conflicting characterization of the agreement shows that the defendant did not, in fact, understand the terms of the agreement.

appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Puckett*, 129 S. Ct. at 1429 (quoting *Olano*, 507 U.S. at 736) (internal quotation marks omitted).

## 1. The Guidelines Calculation

Diaz contends that the district court improperly presumed that a sentence within the applicable Guidelines range was reasonable, citing a statement by the district court at sentencing that "the Fifth Circuit has stated that a guideline sentence that is properly calculated is presumptively reasonable."

In rendering a sentence, a district court may not rely on a presumption that a properly-calculated Guidelines sentence is reasonable, although an appellate court may apply a presumption of reasonableness when reviewing a properly-calculated Guidelines sentence. *United States v. King*, 541 F.3d 1143, 1144–45 (5th Cir. 2008); *see also Rita v. United States*, 551 U.S. 338, 351 (2007); *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 596–97 (2007). Rather, the district court "'must make an individualized assessment based on the facts presented.'" *United States v. Cisneros–Gutierrez*, 517 F.3d 751, 766 (5th Cir. 2008) (quoting *Gall*, 128 S. Ct. at 597). Statements by a district court, however, that a Guidelines sentence would be "appropriate," or that there is "no reason not to apply a Guidelines sentence," are permissible and are not tantamount to a reasonableness presumption. *King*, 541 F.3d at 1145; *see also United States v. Roberts*, 270 F. App'x 349, 351 (5th Cir. 2008) (unpublished).

When determining whether a district court has improperly applied a presumption of reasonableness, we have looked to the substance of the district court's conduct instead of the particular words used. For example, in *United*

6

*States v. Martinez-Davalos*, 293 F. App'x 294, 295 (5th Cir. 2008) (unpublished), we declined to find an abuse of discretion where the district court stated that it was applying a presumption of reasonableness but also explained that it had discretion to depart from the Guidelines, allowed both parties to present their views on an appropriate sentence, and did not impose an improper burden of proof on the defendant. We held that regardless of the words the district court used, the "record rebut[ted] [the defendant's] assertion that the district court . . . improperly applied the presumption of reasonableness in imposing [the] sentence." *Id.* Likewise, in *United States v. King*, 541 F.3d at 1145, we cited the fact that the district court had not required the defendant to prove "extraordinary circumstances" in order to obtain a non-Guidelines sentence as evidence that the court had not applied a reasonableness presumption.

Read in isolation, the district court's statement in the present case that "the Fifth Circuit has stated that a guideline sentence that is properly calculated is presumptively reasonable" could be interpreted as a reference to the appellate presumption given to a district court's within-range sentence. Or, as Diaz urges, the district court could have been stating that a district court may apply a presumption of reasonableness to a within-Guidelines sentence. The district court's statement in the broader context of the sentencing hearing transcript, however, makes clear that the district court did not *in fact* apply a reasonableness presumption in calculating Diaz's sentence. At the sentencing, the district court first calculated the sentencing range under the Guidelines and asked for any objections. None was raised. The court then explained that the Sentencing Guidelines are "advisory" but "do provide a frame of reference for the court," that the court was required to consider the factors under 18 U.S.C.

7

§ 3553(a), and that the court had discretion to depart from the Guidelines, which were "not mandatory." The district court allowed both parties to present argument as to the appropriate sentence and never placed the burden on Diaz to rebut a presumption of reasonableness. After the statement at issue, the district court went on to add that after consideration of "all of the factors under 3553(a)," it had determined that a within-Guidelines sentence would be "fair and reasonable under the circumstances of this case."

If there was any error in the district court's ambiguous statement about the reasonableness presumption, the error was not of the clear and obvious type required by the plain error standard. More importantly, given that the district court recognized that it had discretion to depart from the Sentencing Guidelines, considered the § 3553(a) factors and the totality of the circumstances, and did not require Diaz to rebut any presumption of reasonableness, there is no basis to conclude that the district court in fact applied a reasonableness presumption. The district court's reference to a reasonableness presumption was not plain error.

### 2. The Plea for Leniency

Diaz also contends, for the first time on appeal, that the district court imposed a higher burden of proof than appropriate when considering Diaz's plea for leniency. At sentencing, Diaz contended that he was coerced into the drug trade after he borrowed money from a drug cartel and was kidnaped on two occasions for ransom to repay the debt. The district court found that Diaz had not previously raised the issue of coercion and duress and was offering little in the way of actual evidence that his actions were the product of duress. Diaz now

8

objects to the district court's comment: "I am not supposed to make decisions at sentencing on preponderance of the evidence."

A "'sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence.'" *United States v. Johnson*, 445 F.3d 793, 798 (5th Cir. 2006) (quoting *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005)); *see also United States v. Farias*, 469 F.3d 393, 399–400 (5th Cir. 2006); *United States v. Alonzo*, 435 F.3d 551, 553 (5th Cir. 2006). Diaz contends that the district court erred in applying a higher standard of proof to his coercion and duress claims. The government responds that the district court's comment was "a slip of the tongue that did not reflect the district court's true intentions or application of the law."

Diaz urged the kidnaping claim as a mitigating factor under § 3553(a). Diaz's counsel argued at the sentencing hearing that the "genesis" of Diaz's participation in the drug trade was Diaz's decision to borrow money from a drug cartel. According to Diaz's counsel, Diaz was kidnaped once, held for $20,000 in ransom, and released after his family paid. Diaz was then kidnaped a second time, tortured, threatened with death, and "forced into th[e] criminal enterprise" when his family could not pay the second ransom demand. Diaz's counsel conceded, however, that Diaz did not withdraw from the criminal enterprise for a "several-year period" after the kidnapings, "even in unsupervised times when he could have gotten his family and moved away."

In an unsworn statement, Diaz described the kidnapings, torture and ransom demands. Diaz also stated that he had "embarrassed" his family by committing a crime, and that he took "full and total blame and responsibility for

[his] crime and actions."[2] Diaz's wife testified under oath that he was kidnaped on two occasions, that she received threatening phone calls demanding ransoms, and that she did not believe he would have entered the drug trade but for the threats and kidnapings.

When the district court asked why none of this information had been raised earlier in the proceedings or formalized in a motion for downward departure from the Guidelines, Diaz's counsel responded that Diaz had instructed him not to do so to protect his family's safety. The district court expressed skepticism about this explanation, pointing out that "[s]ooner or later it [wa]s going to have to come to light if you want the Court to consider it."

The government, when asked for its position, stated that it had discussed the kidnaping issue with defense counsel "on several occasions," and had "no doubt [Diaz] was kidnaped when he was a drug trafficker," but contended that it was not clear that the second kidnaping had preceded Diaz's participation in drug trafficking. The government also pointed out that Diaz had engaged in "unsupervised criminal conduct" for a "long period of time," even after most other members of the conspiracy were arrested, and made "thousands and thousands of dollars." The government opined that Diaz had not earlier raised the kidnaping issue for "tactical" reasons.

The district court concluded: "[I]f the Court is going to properly take this into consideration, then the Court needs facts to support the argument not statements of Counsel. I mean, a lot of what you told me was statement of Counsel. It may be one percent true. I do not have any evidence to support it

---

[2] It is not clear from Diaz's testimony whether his statements of remorse referred to his decision to borrow money from a drug cartel or his subsequent participation in drug trafficking activity.

is." While making this and other comments, the district court also commented: "I am not supposed to make decisions at sentencing on preponderance of the evidence."

In rendering Diaz's sentence, the district court stated that it had considered the coercion and duress issue under § 3553(a) but that the "information or evidence on that appear[ed] to be mixed at best":

> The bottom line is the Court is not convinced that Mr. Diaz's criminal conduct was the result of—was necessarily the result of coercion or duress at all times. Mr. Diaz himself admitted that he engaged in certain criminal conduct and, frankly speaking, the record is not fully developed to convince the Court that it should make some type of adjustment under 3553(a)(1). If the record were more fully developed that Mr. Diaz was, in fact, forced to engage in the criminal activity with which he has been charged, then perhaps the Court would see this in a different light insofar as the sentence is concerned. That showing has not been made.

Diaz relies solely on the district court's statement that "I am not supposed to make decisions at sentencing on preponderance of the evidence" to support his contention that the district court incorrectly imposed a higher burden of proof. But the district court's comments show that it did not impose a higher burden of proof. The court did not decline to reduce the sentence because there was not "[e]vidence by 'fifty-one percent,' or to the extent of 'more likely than not,'" as the preponderance of the evidence standard requires. *See In re OCA, Inc.*, 551 F.3d 359, 372 n.41 (5th Cir. 2008) (quotation marks and citation omitted). The court declined to reduce the sentence because there was almost no evidence (as opposed to argument) of coercion or duress. The district court did not apply an incorrect burden of proof. While the district court did apparently make an inaccurate comment about the burden of proof, the record makes clear that it did

not apply an incorrect burden. In this respect, there was no error, plain or otherwise.

## IV. The Substantive Unreasonableness Challenge

Diaz also contends that his sentence was substantively unreasonable because the district court, applying improper procedural requirements, did not properly consider evidence of coercion and duress as a mitigating factor. We have already rejected Diaz's contention that the purported procedural errors were outcome-determinative or otherwise affected his substantial rights. Further, a within-Guidelines sentence is entitled to a presumption of reasonableness on appeal. *See United States v. Rodriguez*, 523 F.3d 519, 524–25 (5th Cir. 2008). Diaz does not dispute that the Guideline range of 108 to 135 months was properly calculated, or that the sentence imposed, 108 months, was at the bottom of that range. The district court adequately considered the factors under § 3553(a). We find "no reason to disturb" the sentence imposed by the district court. *Id*. at 526.

## V. Conclusion

Accordingly, we AFFIRM the judgment of the district court.