# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-30778

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ANGELA MYERS,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

October 30, 2014

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Middle District of Louisiana

Before STEWART, Chief Judge, and BENAVIDES and OWEN, Circuit Judges.
CARL E. STEWART, Chief Judge:

Angela Myers was charged with and convicted of several counts of identify-theft-related crimes, including signing false tax returns. She was sentenced to 132 months imprisonment, due in part to a six-level enhancement for 250 or more victims and a two-level enhancement for vulnerable victims. Myers appeals the application of those enhancements: the six-level enhancement because she argues that an Ex Post Facto Clause violation occurred wherein the sentencing guidelines effective at the time of the crime would not have characterized many of the individuals as "victims," and the two-level enhancement because she contests whether she knew or should have known of the vulnerability of the victims. Because we agree that an Ex Post

No. 13-30778

Facto Clause violation occurred, we VACATE the sentence and REMAND for resentencing. Further, the district court did not err in applying the vulnerable victim enhancement.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Angela Myers owned Angela's Tax Service from 2007 until 2012, through which she filed fraudulent tax returns for over 285 persons. Myers repeatedly obtained means of identification of individuals, prepared false tax returns without the consent of these individuals, and kept the refunds for herself. Myers obtained about 100 of the names, social security numbers, and other identifying information for these persons from Clarissa Ayo. Ayo and Myers had known each other for several years. Ayo worked for a nursing home and, after speaking with Myers, Ayo gave Myers the roster of the nursing home residents. Myers subsequently used the identities of the nursing home residents to file false tax returns. Because the nursing home residents would not have filed tax returns otherwise, they did not have any pecuniary loss, and the only party arguably to suffer pecuniary loss was the IRS.

### B. Procedural Background

Myers was indicted for nine counts of making false, fictitious, or fraudulent claims, five counts of wire fraud, five counts of aggravated identity theft, and two counts of filing a false income tax return. Myers's total offense level was 31, including a six-level enhancement under U.S.S.G. § 2B1.1(b)(2)(C) because the offense involved 285 victims and a two-level enhancement under U.S.S.G. § 3A1.1(b)(1) because at least some of the victims were vulnerable.

Prior to sentencing, Myers objected to the six-level enhancement, arguing that the evidence at trial established only eight victims and that the means and methodology of arriving at the calculation of 285 victims was not

explained in the Presentence Report. Myers also objected to the two-level enhancement because she argued that there was no evidence that she knew or should have known that some of the victims were vulnerable. The district court sustained an objection based on the amount of the loss but overruled all other objections. Therefore, Myers's guidelines range was 87–108 months based on a total offense level of 29 and a Category I criminal history score.

The district court sentenced Myers to concurrent terms of 60 months for making false, fictitious, or fraudulent claims, 108 months for wire fraud, and 36 months for filing a false tax return. Myers also received a term of 24 months of imprisonment for aggravated identity theft to be served consecutively to the terms of imprisonment imposed on the other counts. Her total term of imprisonment was 132 months. The district court also ordered Myers to serve a total of two years of supervised release. Myers filed a timely notice of appeal. After filing her initial brief, Myers untimely filed a reply brief that was not accepted into the record. In the untimely reply brief, Myers argued for the first time that an Ex Post Facto Clause violation occurred when the 2009 sentencing guidelines in effect at the time of sentencing were applied to Myers instead of the 2007 guidelines in effect at the time of her offense. Myers argued that if the 2007 guidelines were applied, the six-level enhancement for 250 or more victims would not have been imposed, as the 2007 guidelines required a victim to have suffered pecuniary loss. Because the only party to suffer pecuniary loss was the IRS, Myers argued, the other persons whose identifying information was stolen were not "victims." The government conceded to plain error in a letter pursuant to Federal Rule of Appellate Procedure 28(j), stating that this court has the discretion to vacate the sentence and remand for resentencing if necessary to avoid the miscarriage of justice. The government also cited to *Peugh v. United States* in furthering the premise that an Ex Post Facto Clause violation occurred when the retroactive application of the newer

No. 13-30778

guidelines increased Myers's sentence range.  133 S.Ct. 2072, 2088 (2013).

Myers also argued for the first time in her reply brief that she received ineffective assistance of counsel.

## **DISCUSSION**

As a preliminary matter, we recognize that the Appellant's reply brief was not timely filed and is thus not a part of the official record on appeal. Because the Government served its brief on March 10, 2014, Myers had until March 27, 2014, to file a reply brief.  *See* Fed. R. App. P. 31(a)(1); Fed. R. App. P. 26(c).  According to the clerk's office, the reply brief was not filed until March 28, 2014.  However, the certificate of service in the reply brief indicated that it was filed on March 27, 2014.  Despite this, the reply brief was deemed untimely and was not accepted for filing.  Thus, it is not a part of the record on appeal, and we generally do not consider arguments made in an untimely reply brief. *See U.S. v. Lewis*, 621 F.2d 1382, 1386 (5th Cir. 1980).

Yet, this is a very close call.  There are unique circumstances in this case that may warrant our supplementing the record: the dates on which the reply brief was allegedly filed are only one day apart (March 27 versus March 28), which may be due to the electronic filing process; the issue raised in the untimely reply brief is a constitutional one of much importance; and the Government conceded to plain error, referencing the *Ex Post Facto* Clause argument raised for the first time in the reply brief without objection to its untimeliness.  Given these extraordinary circumstances, we exercise our discretion to supplement the record *sua sponte* and include the reply brief for our consideration.[1]

---

[1] Pursuant to Federal Rule of Appellate Procedure 10(e)(2)(c), the court of appeals may supplement the record "if anything material to either party is omitted from . . . the record by error or accident . . . .";  *see also Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1074 n.1 (10th Cir. 2009); *Yarrington v. Davies*, 992 F.2d 1077, 1080–81 (10th Cir. 1993); *Cuello-Suarez v. Puerto Rico Elec. Power Authority*, 988 F.2d 275, 277 (1st Cir. 1993).

No. 13-30778

## A. <u>Ex Post Facto Clause</u>

### *a. Standard of Review*

We generally do not consider arguments made for the first time in a reply brief and deem those arguments waived. *See Flex Frac Logistics, L.L.C. v. NLRB*, 746 F.3d 205, 208 (5th Cir. 2014). However, "we ordinarily have the discretion to decide legal issues that are not timely raised." *United States v. Rodriguez*, 602 F.3d 346, 360–61 (5th Cir. 2010) (citing *United States v. Vontsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992)). We review these issues for plain error. *See Rodriguez*, 602 F.3d at 360.

A defendant's sentence will only be corrected under plain error if the following elements are met:

> (1) there [is] an error or defect . . . ; (2) the legal error [is] clear or obvious, rather than subject to reasonable dispute; (3) the error [has] affected the appellant's substantial rights; and (4) if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (internal quotation marks and citation omitted). The fourth element of the plain error analysis lends this court the discretion to correct error that clearly affects a defendant's sentence. *See United States v. John*, 597 F.3d 263, 285–86 (5th Cir. 2010). When there is a "reasonable probability that, but for the district court's misapplication of the Guidelines, [the appellant] would have received a lesser sentence," that error clearly affects a defendant's sentence. *United States v. Blocker*, 612 F.3d 413, 416 (5th Cir. 2010) (internal quotation marks and citation omitted). "[W]hen a district court's error clearly affects a defendant's sentence, that error seriously affects the fairness, integrity, or public

5

reputation of judicial proceedings, particularly when the disparity between the Guidelines' range applied by the district court and the correctly calculated range is significant." *John*, 597 F.3d at 285.

### b. *Applicable Law*

Generally, a district court "must apply the version of the sentencing guidelines effective at the time of sentencing unless application of that version would violate the *Ex Post Facto* Clause of the Constitution." *United States v. Rodarte-Vasquez*, 488 F.3d 316, 322 (5th Cir. 2007) (citation omitted). Although the sentencing guidelines are now advisory, "[s]uch a violation occurs when application of the Guidelines in effect at sentencing results in a harsher penalty than would application of the Guidelines in effect when the offense was committed." *Id*; *see Peugh*, 133 S. Ct. at 2079–81.

### c. *Analysis*

Although Myers argued that there had been an Ex Post Facto Clause violation for the first time in her untimely filed reply brief, we exercise our discretion to consider this argument, not only because it is a question of law but because the misapplication of the guidelines in effect at the time of her sentencing caused a significant disparity between the sentence Myers received and the sentence she would have received had the guidelines in effect at the time of her offense been applied. *See Rodriguez*, 602 F.3d at 360–61. If the 2007 guidelines were applied, Myers would not have received the six-level enhancement for 250 or more victims, as the only "victim" to suffer actual pecuniary loss would have been the IRS. This would significantly decrease Myers's sentencing range from 87–108 months, based on an Offense Level of 29, to 46–57 months, based on an Offense Level 23. It is also relevant that the Government, in its 28(j) letter, conceded that application of the 2012 guidelines was in plain error, but left the question of vacating the sentence and remanding for resentencing to this court, stating that we should remand only

if necessary to avoid a "miscarriage of justice." *United States v. Dominguez-Alvarado*, 695 F.3d 324, 327–28 (5th Cir. 2012).

We too find plain error in the district court's application of the 2012 sentencing guidelines. First, there was an error in the sentencing, as a six-level enhancement was misapplied to Myers's sentence due to the district court's reliance on an improper definition of victims found in the 2012 Guidelines in effect at the time of the sentencing. Because the 2007 Guidelines required a victim to have suffered pecuniary harm and only one victim (the IRS), suffered pecuniary harm, the 2012 Guidelines created a harsher sentence for Myers, further resulting in error. Second, the error was plain, obvious, and not subject to reasonable dispute because, in light of *Peugh*, the application of the 2012 Guidelines imposes a more onerous sentence upon Myers, clearly implicating a violation of the Ex Post Facto Clause. *Peugh*, 133 S. Ct. at 2088; *see also United States v. Castillo-Estevez*, 597 F.3d 238, 241 (5th Cir. 2010). Finally, because the application of the 2012 Guidelines imposes a six-level enhancement to Myers's sentence, increasing it by 41 to 51 months, this error affected Myers's substantial rights by imposing a significant risk of a higher sentence, just as in *Peugh*. 133 S.Ct. at 2088.

Further, because Myers's sentence is increased by 41 to 51 months, we hold that the misapplication of the six-level increase seriously affects Myers's substantial rights and offends the fairness, integrity, or public reputation of judicial proceedings. *See Rodarte–Vasquez*, 488 F.3d at 322; *Blocker*, 612 F.3d at 416. As such, we exercise our discretion to VACATE Myers's sentence and REMAND to the district court for resentencing.

## B. Vulnerable Victim Enhancement

### a. Standard of Review

Objections to the district court's application of enhancements are reviewed de novo. *See United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764

(5th Cir. 2008). However, the district court's factual determinations are decisions "that the district court is best suited to make" and will be reviewed by this court only for clear error. *United States v. Wilcox*, 631 F.3d 740, 754 (5th Cir. 2011) (citation omitted); *Rocha*, 916 F.2d at 244 ("[T]he district court's [factual] determination . . . is entitled to due deference."). "There is no clear error if the district court's [factual] finding is plausible in light of the record as a whole." *United States v. Valdez*, 726 F.3d 684, 692 (5th Cir. 2013); *see also United States v. Ekanem*, 555 F.3d 172, 175 (5th Cir. 2009).

Further, "[t]he government must prove sentencing enhancements by a preponderance of the evidence." *United States v. Juarez*, 626 F.3d 246, 251 (5th Cir. 2010); *see also United States v. Diaz*, 344 F. App'x 36, 43 (5th Cir. 2009) ("The court did not decline to reduce the sentence because there was not evidence by fifty-one percent, or to the extent of more likely than not, as the preponderance of the evidence standard requires . . . ." (internal quotation marks and citation omitted)). This court may draw reasonable inferences to determine whether the record supports the enhancement by a preponderance of the evidence. *See Wilcox*, 631 F.3d at 755 ("The inferences we draw after our own review of the whole record reinforce the plausibility of the district court's application of the enhancement."); *Juarez*, 626 F.3d at 251 ("A district court may draw reasonable inferences from the facts when determining whether an enhancement applies, and we review those inferences for clear error.").

### b. Applicable Law

The Guidelines provide for a two-level enhancement where a defendant "*knew or should have known* that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1) (emphasis added). As relevant here, vulnerable victim "means a person . . . who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 cmt. n.2. The "vulnerable victim guideline is

primarily concerned with the impaired capacity of the victim to detect or prevent crime," *United States v. Gill,* 99 F.3d 484, 486 (1st Cir. 1996), or a victim who is "less able to resist than the typical victim of the offense of the conviction." *United States v. Angeles–Mendoza,* 407 F.3d 742, 747 n.5 (5th Cir. 2005) (internal citations and quotations omitted).

The requirement that a party "knew or should have known" references both actual and constructive knowledge. When a party "knows" something, they have "actual knowledge" of it, meaning there is "direct and clear knowledge." *Black's Law Dictionary* 950 (9th ed. 2009). However, when a party "should have known" something, they have "constructive knowledge," which is a lesser standard meaning "knowledge that one using reasonable care or diligence should have." *Id.*

### c. Analysis

Myers challenges the application of the two-level enhancement pursuant to U.S.S.G. § 3A1.1(b)(1) based on a finding that she knew or should have known that her victims were vulnerable victims. Myers contends that the evidence on the record that she obtained names and identities from a list of individuals at a nursing home does not support the enhancement. She argues that there was no evidence that she should have known that any victim was unusually vulnerable simply because they were in a nursing home.

Myers's argument is unavailing. Viewing the facts in the light most deferential to the district court's findings, it is plausible that Myers knew—or should have known—that the list of more than 100 names coming from a nursing home would include at least some people who qualified as vulnerable victims under U.S.S.G. § 3A1.1. Based on Ayo's testimony and the length of her relationship with Myers, it was reasonable for the district court to infer that Myers should have known where Ayo worked and where the names came from. Even though Myers argues that she did not have actual knowledge of

the nursing home residents' mental and physical incapacities, she cannot successfully argue that she did not have constructive knowledge. A reasonable person, in Myers's position, should know that at least some of the residents of a nursing home are residents due to their mental or physical disabilities. It is reasonable to impute this common knowledge upon Myers. Thus, the district court made reasonable inferences and determined, by a preponderance of the evidence, that Myers's relationship and discussion with Ayo prior to Ayo giving her the list supported Myers's constructive knowledge of the vulnerable victims. *See Wilcox,* 631 F.3d at 755. Thus, the district court did not clearly err in applying the vulnerable victim enhancement based upon its factual findings. *See* U.S.S.G. § 3A1.1 cmt. n.2; *see also Cisneros–Gutierrez,* 517 F.3d at 764.

## C. **Ineffective Assistance of Counsel**

Although Myers argues that she was deprived of effective assistance at trial, she acknowledges in the reply brief that the claim was not raised at the district court and may not be properly reviewed on direct appeal. She conceded that resolution of her claims of ineffective assistant of counsel would require this court to review evidence outside of the record on appeal. As such, these claims are properly reserved for collateral attack. *See United States v. Cantwell,* 470 F.3d 1087, 1091 (5th Cir. 2006) ("[A] claim for ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations." (internal quotation marks and citation omitted)). Therefore, we decline to consider this claim.

## CONCLUSION

For the foregoing reasons, we VACATE Myers's sentence and REMAND for resentencing due to an Ex Post Facto Clause violation.