# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 19, 2022

Lyle W. Cayce
Clerk

No. 21-40162

United States of America,

*Plaintiff—Appellee*,

*versus*

Jose Miguel Montemayor; Marin Macrin Cerda,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:17-CR-588-7

Before Jones, Southwick, and Ho, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

Two members of a group of criminals whose business model was to steal drugs and money from other criminals were jointly tried. The multiple counts in the indictment charged the defendants with offenses involving drugs, firearms, carjackings, and robbery. Both defendants were convicted after a jury trial. Among the many appellate issues are the propriety of introducing certain evidence gathered from cell phones, possible errors in the description of certain offenses in the indictment and jury instructions, and whether the judge improperly made fact findings about drug quantities. For the most part, we AFFIRM. One error requires a REMAND for the

No. 21-40162

Government to elect between overlapping counts. The Government has conceded evidentiary insufficiency as to one count, which we REVERSE.

FACTUAL AND PROCEDURAL BACKGROUND

From 2016 to 2017, Jose Miguel Montemayor and Marin Macrin Cerda were part of a "rip crew" that stole large amounts of drugs from traffickers transporting drugs from Mexico to the Rio Grande Valley in south Texas. The rip crew's activities included carjackings, home invasions, and brandishing and discharging firearms during their operations.

Montemayor and Cerda were indicted in 2017 by a grand jury for the United States District Court for the Southern District of Texas. Cerda was charged with 19 counts in the indictment, and 13 of those also charged Montemayor. In 2019, a seven-day jury trial was conducted on the charges.

Members of the rip crew testified at trial against Montemayor and Cerda about their involvement in the offenses. Both were charged with participating in two separate conspiracies: possession with the intent to distribute five kilograms or more of cocaine from on or about July 7, 2016, to on or about June 7, 2017 (Count One), and possession of a firearm to further a drug conspiracy and a crime of violence (carjackings) (Count Two). Cerda was charged with participating in one additional conspiracy to possess with the intent to distribute 100 kilograms or more of marijuana on or about January 6, 2017 (Count Eighteen).

The rip crew's significant carjackings included: (1) a carjacking of a drug trafficker named "Indio" on November 28, 2016, and discharging a firearm during a drug trafficking crime (Counts Five and Six); (2) a carjacking of a Chevrolet Silverado on February 27, 2017, and discharging a firearm during a drug trafficking offense (Counts Seven and Eight); (3) a carjacking at Stripes convenience store on March 12, 2017, and brandishing a firearm during a drug trafficking offense and crime of violence (Counts Nine and

No. 21-40162

Ten); and (4) a carjacking of a Chevrolet Cobalt in Las Milpas on April 6, 2017, and brandishing a firearm during a drug trafficking offense and crime of violence (Counts Eleven, Twelve, and Thirteen). Montemayor and Cerda also participated in a home invasion on or about June 6, 2017, through June 7, 2017, when they invaded a home in McAllen, Texas, under the mistaken belief cocaine was stored in the home (Count Sixteen).

Montemayor and Cerda moved for the suppression of evidence obtained via cell-site location information ("CSLI"), as well as the suppression of evidence obtained through cell-tower dumps. The district court, however, did not reach the merits of the motion to suppress because it concluded the defendants lacked standing to assert a Fourth Amendment violation inasmuch as they would not stipulate that any phone was theirs.

The jury convicted both men on all counts, 13 for Montemayor and 19 for Cerda. Montemayor's total sentence was 1,008 months of imprisonment and five years of supervised release. Cerda received 1,356 months of imprisonment and five years of supervised release. Each defendant timely appealed.

## DISCUSSION

### I.     *Rule 28(i) adoption of arguments*

Preliminarily, the Government argues Cerda did not validly adopt Montemayor's arguments in Cerda's initial brief when he stated he "joins in those points raised by his co-appellant that are relevant to him and consistent with his interests." Federal Rule of Appellate Procedure 28(i) states:

> In a case involving more than one appellant or appellee, including consolidated cases, any number of appellants or appellees may join in a brief, and any party may adopt by reference a part of another's brief. Parties may also join in reply briefs.

"[N]either Rule 28 nor our case law requires appellees to explain in their filing why joinder is appropriate"; instead, we "simply requir[e] that the arguments adopted [be] 'equally applicable' to both parties." *Smith v. Hood*, 900 F.3d 180, 184 n.4 (5th Cir. 2018). The Government argues Cerda waived his right to appellate review by failing to delineate which arguments he was adopting, and that "fact-specific challenges to [a defendant's] own conviction or sentence" cannot be adopted. *United States v. Alix*, 86 F.3d 429, 434 n.2 (5th Cir. 1996).

It could well be that Cerda's identification of issues was impermissibly obscure in his initial brief, but in his reply brief, Cerda specified the arguments he was seeking to adopt. Generally, arguments made for the first time in a reply brief are made too late. *United States v. Myers*, 772 F.3d 213, 218 (5th Cir. 2014). That principle should apply to clarifications of incorporation, too. Nonetheless, in light of the fact the Government has responded in its briefing to the codefendant's identical arguments, we exercise our discretion to consider the arguments as adopted under Rule 28(i). *See id.*

## II.    *Motion to suppress evidence*

The district court denied the defendants' motion to suppress certain evidence about cell phones. When reviewing the denial of a motion to suppress, we review "factual findings for clear error and legal conclusions about the constitutionality of the conduct of law enforcement officers *de novo*." *United States v. Beene*, 818 F.3d 157, 161 (5th Cir. 2016). "Factual findings are clearly erroneous only if a review of the record leaves this Court with a definite and firm conviction that a mistake has been committed." *United States v. Hearn*, 563 F.3d 95, 101 (5th Cir. 2009) (quotation marks and citation omitted). Conversely, factual findings are "not clearly erroneous if it is plausible in light of the record as a whole." *United States v. Zuniga*, 720

F.3d 587, 590 (5th Cir. 2013).  The court considers evidence "taken both at the suppression hearing and at trial in the light most favorable to the ruling." *United States v. Rideau*, 969 F.2d 1572, 1576 (5th Cir. 1992).

To support a Fourth Amendment violation, a defendant must have "a legitimate expectation of privacy in the invaded place" or thing.  *United States v. Iraheta*, 764 F.3d 455, 461 (5th Cir. 2014) (quotation marks and citation omitted).  Montemayor and Cerda argue the district court erred when it denied their joint motion to suppress evidence obtained via CSLI and evidence obtained through cell-tower dumps.  The district court determined the defendants lacked standing for a Fourth Amendment challenge and, therefore, the court did not analyze suppression under *Carpenter v. United States*, 138 S. Ct. 2206 (2018).

Even though one phone appeared to be registered to Montemayor, the district court concluded he lacked standing because he "declined to stipulate to ownership of any phone."  The court found the following:

> Defendants have made no claim that they had a subjective expectation of privacy in the phones at issue.  Second, and perhaps more importantly, Defendants have made no claim whatsoever that either was ever in lawful possession or control of the phones in question or that either had any right to use or access, much less exclude others from use and access of the phones.  To the contrary, Defendants have explicitly denied the "use, possession, or ownership of the cell phones the subject of the[] records" at issue.  Even Montemayor, to whom one of the phones is apparently registered, has "respectfully declined to stipulate to ownership of any phone."

Montemayor seeks to establish standing to challenge the Fourth Amendment violation through circumstantial evidence.  The Government argues Montemayor disclaimed or renounced any privacy interest he may have had by failing to stipulate to ownership of the phones.  In reply,

Montemayor argues he did not disclaim a privacy interest. Instead, he declined to stipulate because he invoked his Fifth Amendment right to remain silent.

Montemayor presents an argument that apparently has yet to be explored in our precedent. We pretermit addressing this difficult question of the intersection between a defendant's Fourth and Fifth Amendment rights because the denial of the motion to suppress did not prejudice defendants. There is substantial evidence in the record to support the convictions under Counts Eleven, Twelve, Thirteen, and Sixteen, without the evidence obtained via CSLI or the cell-tower dumps. The jury credited the testimony of numerous members of the rip crew who participated in the carjackings and home invasion that predicate these counts. Thus, no reversible error occurred in denying the motion to suppress.

### III.    Double Jeopardy violations

Both defendants argue that convictions on two different pairs of counts violated the Fifth Amendment Double Jeopardy Clause. We begin with Counts Six and Eight — discharging a firearm during the carjacking of a drug trafficker on November 28, 2016; and discharging a firearm during a drug trafficking crime during the carjacking of a Chevrolet Silverado on February 27, 2017. The defendants were convicted of one drug trafficking conspiracy, Count One, but two counts of discharging a firearm. They received consecutive sentences for separate Section 924(c)(1) violations. Though the two counts allege separate incidents on different dates, multiple firearm counts cannot be predicated on the same conspiracy: "[i]mposing consecutive sentences in these circumstances is inconsistent with the rule in this circuit." *United States v. Baptiste*, 309 F.3d 274, 278 (5th Cir. 2002). We require each firearms conviction under Section 924(c)(1) to be "sufficiently

linked to a separate drug trafficking offense"; otherwise, double jeopardy exists. *Id.* at 279 (quotation marks and citation omitted).

Though there was no objection on this basis in district court, the Government concedes these two counts violate double jeopardy because they were predicated on the same conspiracy offense. The drug conspiracy was the only predicate offense for each of these counts. The Government states, and we agree, the convictions on those two counts must be vacated and, on remand, the Government will be required to elect which count to dismiss.

Next, we consider Counts Ten and Thirteen. Count Ten charged both defendants with brandishing a firearm during and in relation to a drug trafficking offense *and* during a crime of violence. We will explain why the crime of violence would have been understood by jurors as a carjacking at Stripes convenience store on March 12, 2017. Count Thirteen charged both defendants with brandishing a firearm during a drug trafficking offense *and* during the carjacking of a Chevrolet Cobalt in Las Milpas on April 6, 2017. Montemayor and Cerda argue it is ambiguous whether Counts Ten and Thirteen were predicated on different offenses, and they assert the two counts were based on either the Count One drug conspiracy or an unspecified carjacking. The Government disagrees and relies on the fact that Counts Ten and Thirteen each had two predicate offenses — the Count One drug conspiracy and separate carjackings. The Government argues the double jeopardy issue arising from the single drug trafficking offense is irrelevant because no such defect applies to the separate crimes of violence.

We examine the issue. Because defendants did not object on this basis in district court, we review for plain error. *See United States v. Njoku*, 737 F.3d 55, 67 (5th Cir. 2013). To establish plain error, "a defendant must show (1) error, (2) that is clear or obvious, and (3) that affected the defendant's substantial rights." *United States v. Hinojosa*, 749 F.3d 407, 411 (5th Cir.

2014). The third step of the analysis may be satisfied by showing "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016) (quotation marks and citation omitted). If the defendant establishes these first three steps, then the court "may in its discretion remedy the error only if it (4) seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Hinojosa*, 749 F.3d at 411 (quotation marks and citation omitted) (alteration in original).

Section 924(c)(1)(A) sets out the penalty for those who "use[] or carr[y] a firearm, or who, in furtherance of any such crime, possess[] a firearm" "during and in relation to any crime of violence *or* drug trafficking crime." 18 U.S.C. § 924(c)(1)(A) (emphasis added). We just discussed that the Section 924(c) offenses charged in Counts Six and Eight were improperly linked to the same drug trafficking offense. Counts Ten and Thirteen, though, were predicated both on an offense of drug trafficking and on a crime of violence. *See United States v. Privette*, 947 F.2d 1259, 1262–63 (5th Cir. 1991). Thus, as to those counts, there is more to examine.

Here, the jury returned a general jury verdict that did not specify on which conspiracy or carjacking offense the firearms convictions were based. Count Ten charged the following Section 924(c) offense:

> On or about March 12, 2017, in the Southern District of Texas and within the jurisdiction of the Court, defendants, Marin Macrin Cerda also known as "Filtro" [and] Jose Miguel Montemayor also known as "El Mickey". . . aiding and abetting each other and others, did knowingly brandish a firearm, during and in relation to a drug trafficking offense and crime of violence for which they may be prosecuted in a court of the United States, namely, Conspiracy to Possess with Intent to Distribute a Controlled Substance, to wit a mixture or substance containing a detectable amount of cocaine, in

> violation of Title 21 United States Code Sections 841 and 846
> and Carjacking in violation of Title 18 United States Code
> Section 2119. All in violation of Title 18, United States Code,
> Sections 924(c)(1)(A)(ii) and 2.

Count Thirteen charged the following Section 924(c) offense:

> On or about April 7, 2017, in the Southern District of Texas
> and within the jurisdiction of the Court, defendants, Marin
> Macrin Cerda also known as "Filtro" and Jose Miguel
> Montemayor also known as "El Mickey" aiding and abetting
> each other and others, did knowingly discharge a firearm,
> during and in relation to a drug trafficking offense and crime of
> violence for which they may be prosecuted in a court of the
> United States, namely, Conspiracy to Possess with Intent
> to Distribute a Controlled Substance, to wit a mixture or
> substance containing a detectable amount of cocaine, in
> violation of Title 21 United States Code Sections 841 and 846,
> [and] Carjacking in violation of Title 18 United States Code
> Section 2119 . . . . In violation of Title 18, United States Code,
> Sections 924(c)(1)(A)(iii) and 2.

Montemayor argues it is unclear from the general jury verdict form "whether the jury found beyond a reasonable doubt that the convictions were based on the drug conspiracy[,] a carjacking[,] or both." He relies on a precedent in which we vacated multiple Section 924 convictions because the jury verdict form "did not require the jury to specify which predicate offense or offenses it relied upon in convicting" the defendants. *United States v. Jones*, 935 F.3d 266, 269 (5th Cir. 2019). He further argues this error affected his substantial rights "because the outcome at trial may have been different absent the inclusion of the invalid drug conspiracy predicate" for Counts Ten and Thirteen.

It is true that the verdict form did not require jurors to specify the predicate offenses on which they relied. The verdict form was similarly

unenlightening in *Jones*. *Id.* The reason for reversal in *Jones* was that jurors were given two theories of guilt, and some jurors may have accepted only the invalid one. *Id.* at 270. Unlike in *Jones*, though, neither defendant here argues the evidence is insufficient to support the different carjackings for the two counts. At least under plain error review, we cannot conclude that the substantial rights of the defendants were affected. The double jeopardy problem that caused us to remand on Counts Six and Eight does not cause us to do the same for Counts Ten and Thirteen because it is harmless. We explain.

Counts Ten and Thirteen charged the defendants with brandishing and discharging a firearm "during and in relation to a drug trafficking offense and a crime of violence." Though neither of those counts expressly identifies the crime of violence, each count is immediately preceded in the indictment by the relevant count for a crime of violence. Count Nine of the indictment identifies the same named defendants as Count Ten, shows the same date for the offense, and details a carjacking. Counts Eleven and Twelve of the indictment charge the same two defendants as Count Thirteen, describe offenses of the same date, and charge both a carjacking and a robbery by force, violence, or threat. The identical dates and defendants are clearly shown on the verdict form setting out the elements of each count and provide a blank for the jury to indicate whether each defendant was found guilty or not. No party discusses whether any part of closing argument or any oral instructions from the court might have tied the counts together even more clearly. Regardless, we find the connections of Counts Nine and Ten, and of Counts Eleven, Twelve, and Thirteen, to be unambiguous.

As to the evidence, the brandishing and discharging of a firearm during each of the carjackings in Counts Nine and Eleven was undisputed. Based on this record, we can perceive no juror uncertainty when finding the defendants guilty of brandishing a firearm during an actual or attempted

carjacking. The predicate drug trafficking offense is inconsequential to the validity of the finding of guilt on Counts Ten and Thirteen, meaning there is neither a double jeopardy problem nor a risk that jurors relied *only* on an improper predicate offense.

### IV.  *The jury was required to determine the drug quantity*

For the first time on appeal, Montemayor and Cerda argue that the district court plainly erred when it failed to have the jury resolve the factual issue of the drug quantity relevant for their convictions for conspiracy to possess with intent to distribute five kilograms or more of cocaine (Count One). Instead, the district court made this determination at sentencing. Montemayor and Cerda argue this error affected their substantial rights because the district court used that determination to impose a mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A)(ii).

The defendants rely on two different precedents. In the earlier one, the Supreme Court held that any fact that enhances a statutory minimum penalty must be proved beyond a reasonable doubt to the jury. *Alleyne v. United States*, 570 U.S. 99, 115–16 (2013). Two years later, this court explained we have always "limited the defendant's liability to the quantity of drugs with which he was directly involved or that was reasonably foreseeable to him." *United States v. Haines*, 803 F.3d 713, 740 (5th Cir. 2015). In a drug conspiracy case, "for purposes of statutory minimums at sentencing, the relevant quantity is the quantity attributable to the individual defendant." *Id.* at 742. The Supreme Court's "longstanding rule" requires juries to determine "the amount which each defendant knew or should have known was involved in the conspiracy." *Id.* at 741 (quotation marks and citation omitted). We have added to that requirement that a jury needs to make the individualized determination of the drug type and quantity for which each defendant is responsible. *Id.* at 742.

Clearly, the jury should have been given the factual issue of the relevant drug quantities. Because there was no objection at trial, we consider whether the error was clear or obvious, whether it affected the defendants' substantial rights, and, if all of that, also whether such error "seriously affects the fairness, integrity[,] or public reputation of judicial proceedings." *Hinojosa*, 749 F.3d at 411 (quotation marks and citation omitted).

Here, a grand jury charged Montemayor and Cerda with conspiracy to possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine (Count One). This charge carries a mandatory minimum term of 10 years' imprisonment and a maximum term of life. 21 U.S.C. § 841(b)(1)(A)(ii). The trial jury found *the overall* conspiracy involved five kilograms or more of a mixture or substance containing a detectable amount of cocaine.

We are satisfied that plain error exists if the "judge determined the drug quantities attributable to each defendant, rather than submitting that question to the jury." *United States v. Benitez*, 809 F.3d 243, 250 (5th Cir. 2015). That occurred here. The Government concedes the district court committed a clear and obvious error; therefore, the first two steps of plain error review are satisfied.

As for whether the defendants' substantial rights were affected, the Government does not respond to Montemayor and Cerda's arguments. Both defendants argue the district court's error affected their substantial rights because the court erroneously viewed the statutory mandatory minimum to be 10 years for the drug conspiracy. This "mistaken belief" factored into the remaining sentences imposed, creating what they argue is a reasonable probability the outcome would have been different absent the error. Montemayor and Cerda contend the district court "incorrectly concluded that it lacked discretion to go below a ten-year term of imprisonment, when

in fact no minimum term existed" because the drug quantity attributable to them was never proven beyond a reasonable doubt to the jury.  For purposes of this appeal, we accept that these defendants' substantial rights were affected.

The final consideration for plain error turns on whether "the error seriously affects the fairness, integrity[,] or public reputation of judicial proceedings."  *Molina-Martinez*, 578 U.S. at 194 (quotation marks and citation omitted).  The Government argues the error did not seriously affect the fairness, integrity, or public reputation of the criminal proceedings because "the evidence amply supports the jury's finding that it was reasonably foreseeable" to Montemayor and Cerda that the conspiracy involved over five kilograms of cocaine.

To support its position, the Government relies on one of our opinions in which neither the indictment nor the jury charge alleged a drug quantity to support an enhancement to the statutory maximum penalty.  *United States v. Randle*, 304 F.3d 373, 376–77 (5th Cir. 2002).  In *Randle*, we applied the Supreme Court's decision in *United States v. Cotton*, 535 U.S. 625 (2002).  We analyzed whether the indictment's failure to allege a drug quantity, and a jury's failure to find a drug quantity, for a drug-related offense constituted plain error.  *Id.* at 376–378.  The defendant was sentenced above the 240-month maximum sentence allowed under 21 U.S.C. § 841(b)(1)(C), which does not require proof of a minimum drug quantity.  *Id.* at 375–76.  The increased sentence did not seriously affect the integrity, fairness, or public reputation of the criminal proceedings under the fourth step of plain error review because there was overwhelming and indisputable evidence that the defendant was responsible for the drug quantity for which he was held accountable.  *Id.* at 376–78; *see also Cotton*, 535 U.S. at 632–34.

Montemayor and Cerda assert this 20-year-old opinion is inapplicable because of the Supreme Court's more recent opinion, *Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018). There, the Supreme Court rejected our court's "shock the conscience" approach to the fourth step of plain error review. *Rosales-Mireles*, 138 S. Ct. at 1905–06. In the context of imprisonment, "the failure to correct a plain Guidelines error that affects a defendant's substantial rights" satisfies the fourth step. *Id.* at 1911.

Therefore, "[b]efore a court of appeals can consider the substantive reasonableness of a sentence, '[i]t must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range.'" *Id.* at 1910 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Irrespective of the ultimate reasonableness, "a sentence that lacks reliability because of unjust procedures may well undermine public perception of the proceedings." *Id.* "[W]hat reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands?" *Id.* at 1908 (quoting *United States v. Sabillon–Umana*, 772 F.3d 1328, 1333–1334 (10th Cir. 2014)).

We applied the *Rosales-Mireles* logic to supervised release in *United States v. Campos*, 922 F.3d 686, 688–89 (5th Cir. 2019). There, the district court imposed eight years of supervised release under the mistaken belief that a mandatory minimum controlled. *Campos*, 922 F.3d at 689. We held this was plain error under the fourth step because this presumption "alter[ed] the manner in which the district court approached its decision." *Id.*

In this case, there is overwhelming evidence to support the jury's finding that the conspiracy between Montemayor and Cerda involved more than five kilograms of cocaine. Accordingly, though we agree it was plain

error for the district court not to have the jury make the required drug quantity determinations for each defendant, the defendants have not shown that the fairness, integrity, or public reputation of the judicial proceedings was seriously affected.

## V.     Conflation of Section 924(c)(1)(A) standards

Next, we consider whether it was plain error for the district court to allow the indictment, the jury instructions, the jury verdict form, and the Government's arguments to conflate or otherwise confuse the standards required under 18 U.S.C. § 924(c)(1)(A) for Count Two — conspiracy to possess a firearm during and in relation to a drug trafficking offense and crime of violence.  Because Montemayor did not raise this issue below, it is reviewed for plain error.  *See United States v. McGilberry*, 480 F.3d 326, 328–29 (5th Cir. 2007).

An indictment is sufficient when: "(1) each count contains all essential elements of the offense charged, (2) the elements are charged with particularity, and (3) the charge is specific enough to preclude a subsequent prosecution on the same offense." *McGilberry*, 480 F.3d at 329.

The problem here is that the relevant statute, Section 924(c)(1)(A), identifies "two different types of conduct: the use or carrying of a firearm 'during and in relation to any crime of violence or drug trafficking crime' and the possession of a firearm 'in furtherance of any such crime.'" *United States v. Cooper*, 714 F.3d 873, 877 (5th Cir. 2013) (quoting § 924(c)(1)(A)).  Count Two of the indictment improperly combined the conduct standard of "possession" with the participation standard of "during and in relation to a drug trafficking offense and crime of violence."  The Government concedes Count Two of the indictment is plainly erroneous.  The Government, however, contends the final consideration in plain error review is not satisfied because "the erroneous combination of the elements of the [Section]

No. 21-40162

924(c)(1) offenses in the indictment and elsewhere did not affect the integrity of the proceedings."[1]  We consider if that characterization is correct.

Montemayor and Cerda argue their rights were violated when they were convicted of a non-existent offense, which necessarily "affects the fairness, integrity[,] or public reputation of judicial proceedings." *Molina-Martinez*, 578 U.S. at 194 (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993).  The Government argues, though that "ample evidence exists of Montemayor's [and Cerda's] agreement to participate in the higher conduct (*i.e.*, use or carry) with the higher degree of participation (*i.e.*, during and in relation to)."  Thus, fairness, integrity, and public reputation are unaffected.

We considered a nearly identical error in *McGilberry*, 480 F.3d 326.  There, the indictment erroneously charged possession of a firearm during and in relation to a drug trafficking crime in violation of Section 924(c)(1)(A).  *Id.* at 328–29.  The improper combination of the lower conduct standard with the lower participation standard in the crime failed to set forth the essential elements of any criminal conduct; therefore, the first two steps of plain-error analysis were satisfied.  *Id.* at 331.  The court skipped the third step and considered the effect of this error on the fairness, integrity, or public reputation of the judicial proceedings.  *Id.*  Affirmance would not undermine those considerations because sufficient evidence of using and carrying the firearm existed.  *Id.* at 330–331.  It would have been unreasonable for a jury to find McGilberry possessed the firearm but did not use or carry it.  *Id.*  Witnesses testified that McGilberry possessed the gun sitting on the table

---

[1] When an indictment is questioned on appeal under plain error review, the third step is typically skipped.  "[I]t is unclear what type of showing must be made to prove that a defective indictment affected substantial rights."  *McGilberry*, 480 F.3d at 330.  "The Supreme Court has repeatedly avoided answering that question, and instead chosen to skip this step in the plain error analysis when defective indictments are at issue."  *Id.*

directly in front of him. *Id.* at 331. "[Section] 924 'certainly includes brandishing [and] displaying' a firearm as methods of using it." *Id.* (quoting *Bailey v. United States*, 516 U.S. 137, 148 (1995)).

Applying this reasoning, we start with the fact that Montemayor and Cerda were charged with conspiracy to commit a firearm offense in violation of Section 924(o), not the substantive firearm offense in violation of Section 924(c). To sustain a conspiracy conviction, the Government needed to prove (1) there was an agreement by two or more people to commit a crime (drug trafficking conspiracy or carjacking); (2) Montemayor and Cerda had knowledge of the agreement's unlawful purpose; and (3) they voluntarily participated in it. *See United States v. McClaren*, 13 F.4th 386, 414 (5th Cir. 2021). Participation in the conspiracy can be inferred from a defendant's conduct and the circumstances. *United States v. Harris*, 740 F.3d 956, 962–63 (5th Cir. 2014).

Undisputed testimony from numerous co-conspirators established that Montemayor and Cerda agreed to use firearms during a drug trafficking crime or crime of violence. Because sufficient evidence exists of these defendants' agreement to participate in the higher conduct (use or carry) with the higher degree of participation (during and in relation to), fairness, integrity, and public reputation of the proceedings were not affected. *See McGilberry*, 480 F.3d at 331 (citing *Bailey*, 516 U.S. at 148 and *Muscarello v. United States*, 524 U.S. 125, 136 (1998)). No plain error occurred.

*VII.    Spanish spoken during trial*

Finally, we consider whether Cerda was deprived of his Sixth and Fourteenth Amendment rights to a fair trial and due process because the district court judge occasionally and briefly spoke in untranslated Spanish during the trial. There is no transcript of the comments made and, apparently, no means to reconstruct what was said. We reject that this was

structural error, *i.e.*, a "constitutional error that 'affects the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'" *Jones*, 935 F.3d at 270 (quoting *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017)).

Instead, because there was no objection, we review for plain error. The Government argues there is no error, plain or otherwise, because Cerda "does not explain how the district court's brief comments in Spanish prejudiced him or his defense." Further, Cerda does not challenge the sufficiency of the evidence to support his 19 counts of conviction. Cerda argues, "on appellate review, the parties and the reviewing court should not have to guess what was said at trial by looking to the surrounding words in the record for clues."

Cerda refers to 23 instances in the record where the district court judge speaks in untranslated, untranscribed, and unrecorded Spanish in the presence of the jury. One factor in what to make of this — and perhaps to explain why the district judge occasionally spoke in Spanish — is that the trial was conducted in McAllen in southern Texas, near the Rio Grande, where a substantial number of Spanish speakers live and would be jurors and witnesses. Our review of the trial record reveals that the judge's comments generally were brief and made when witnesses approached or stepped down from the stand. The comments likely often, if not always, were courtesies related to transitions in the trial proceedings and had no substantive content. Further, counsel made no objections at trial. It could well be that defense counsel perfectly understood what the district court judge said, but now, through different counsel, error is asserted.

Before these isolated occasions — to which there was no objection — can be a viable issue for appellate review, the appellant must provide more than has been shown here.

Having declined to reverse, we still caution that all proceedings should be in English or translated into English for the record. Not only is there a potential issue on appeal of untranscribed and untranslated statements by the district judge, but issues also could arise from the fact that some jurors might not understand Spanish. A prospective juror must be able to understand English, but there is no requirement jurors know any other language. *See* 28 U.S.C. § 1865(b)(3). To leave a subset of jurors confused and even suspicious about what the presiding judge is saying is undesirable. We suggest that if a district judge believes it necessary to use Spanish quite briefly and occasionally for nonsubstantive matters, its use should occur only if all counsel are shown on the record as also being able to understand Spanish — to avoid an appellate issue like the one before us — and that the judge make an immediate summary translation of what was said.

### VIII.   *Count Seventeen*

Montemayor and Cerda challenge the sufficiency of the evidence to support Count Seventeen, which charged the commission of a firearms offense during and in relation to a conspiracy to possess with intent to distribute a mixture or substance containing a detectable amount of cocaine and marijuana. The Government agrees with the defendants that there was insufficient evidence to support the conviction. We therefore reverse both defendants' convictions under Count Seventeen.

\*   \*   \*

We VACATE and REMAND the judgment of conviction on Counts Six and Eight for resentencing, REVERSE the judgment of conviction on Count Seventeen and REMAND for entry of a judgment of acquittal, and AFFIRM in all other respects.